# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | |
|---|---|
| MICHAEL SWINDLER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 7:15-cv-02130-SGC |
| ) | |
| SOCIAL SECURITY ADMINISTRATION, ) | |
| COMMISSIONER, ) | |
| ) | |
| Defendant. ) | |

## **MEMORANDUM OPINION**[1]

Plaintiff Michael Swindler appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"). Plaintiff timely pursued and exhausted his administrative remedies, and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3). Also pending is Plaintiff's motion to remand. (Doc. 18). For the reasons that follow, this matter is due to be remanded, and the motion to remand is due to be denied as moot.

## I.   FACTS, FRAMEWORK, AND PROCEDURAL HISTORY

Mr. Swindler was forty-nine years old at the time of the Administrative Law Judge's ("ALJ's") decision. (R. 18, 30). He alleged eligibility for benefits beginning on July 27, 2011, following previous applications and his longstanding history of mental health and medical problems. (R. 18).

When evaluating the disability of individuals over the age of eighteen, the regulations prescribe a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920;

---

[1] The parties have consented to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c). (Doc. 15).

*Doughty v. Apfel,* 245 F.3d 1274, 1278 (11th Cir. 2001).  The first step requires a determination whether the claimant is performing substantial gainful activity ("SGA").  20 C.F.R. § 404.1520(a)(4)(i).  If the claimant is engaged in SGA, he or she is not disabled and the evaluation stops.  *Id*.  If the claimant is not engaged in SGA, the Commissioner proceeds to consider the combined effects of all the claimant's physical and mental impairments.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  These impairments must be severe and must meet durational requirements before a claimant will be found disabled.  *Id*.  The decision depends on the medical evidence in the record.  *See Hart v. Finch,* 440 F.2d 1340, 1341 (5th Cir. 1971).  If the claimant's impairments are not severe, the analysis stops.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  Otherwise, the analysis continues to step three, at which the Commissioner determines whether the claimant's impairments meet the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If the impairments fall within this category, the claimant will be found disabled without further consideration.  *Id.*  If the impairments do not fall within the listings, the Commissioner determines the claimant's residual functional capacity ("RFC").  20 C.F.R. §§ 404.1520(e), 416.920(e).

At step four the Commissioner determines whether the impairments prevent the claimant from returning to past relevant work.  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  If the claimant is capable of performing past relevant work, he or she is not disabled and the evaluation stops.  *Id.*  If the claimant cannot perform past relevant work, the analysis proceeds to the fifth step, at which the Commissioner considers the claimant's RFC, as well as the claimant's age, education, and past work experience to determine whether he or she can perform other work.

*Id.*; 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can do other work, he or she is not disabled. *Id.*

Applying the sequential evaluation process, ALJ George Merchant found Mr. Swindler had not engaged in SGA since the alleged onset of his disability. (R. 23). At step two, the ALJ found Plaintiff suffered from the following severe impairments: obesity; degenerative disc disease of the lumbar spine; status post fracture of the proximal right humerus; degenerative joint disease of the right hip with mild rotatory scoliosis; moderate degenerative joint disease of the right foot with hallux deformity; osteoarthritis of the right shoulder; mood disorder; schizoaffective disorder; and post-traumatic stress disorder ("PTSD"). (*Id.*).

At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments meeting or medically equaling any of the listed impairments. (*Id.*). Specifically, the ALJ stated he considered Listings 1.02, 1.04, 12.03, 12.04., and 12.06. (R. 24). The ALJ made no indication he considered Listing 12.05. (*See id.*). The ALJ found Mr. Swindler's mental impairments did not meet or medically equal the criteria of Listings 12.03, 12.04, or 12.06. (R. 24). In order to meet or medically equal the listed impairments, a mental impairment must result in at least two of the following "paragraph B" criteria: (1) marked difficulties in maintaining social functioning; (2) marked difficulties in maintaining concentration, persistence, or pace; or (3) repeated episodes of decompensation, each of extended duration. (R. 24); *see also* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00 (2012). After a review of the evidence in the record, the ALJ found Plaintiff did not meet the criteria of paragraph B.

The ALJ also considered whether Mr. Swindler met the criteria of "paragraph C" with respect to Listings 12.03, 12.04, and 12.06. (R. 24-25). Paragraph C is to be used when there is a medically documented history of "a chronic organic mental disorder, schizophrenia, or some

other paranoid or psychotic disorder, or an affective disorder." (*Id.*); *see also* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00 (2012). The ALJ found Plaintiff's mental impairments had "not caused any of the limitations set forth" in paragraph C and Plaintiff "had not experienced any episodes of decompensation." (R. 25). Based on these findings, the ALJ found Mr. Swindler did not satisfy the criteria of paragraph C, and thus, Plaintiff's mental impairments did not meet or medically equal any of the listed impairments set forth in the applicable regulations. (*Id.*).

Before proceeding to step four, the ALJ determined Plaintiff had the RFC to perform light work as defined in 20 CFR § 416.967(a) with the following limitations:

> [T]he claimant can never climb ladders, ropes, or scaffolds and as such, should avoid all exposure to the operation or control of hazardous or moving machinery and to unprotected heights. The claimant can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. The claimant can bilaterally handle and finger for gross and fine manipulation no more than frequently. The claimant can understand, remember, and carry out no more than simple instructions and can perform simple, one to two step tasks. The claimant requires a low stress setting, which is defined as occasional decision making and infrequent changes in the workplace. Contact with the public and coworkers should be no more than occasional.

(R. 25).

At step four, the ALJ determined Plaintiff was unable to perform any of his past relevant work. (R. 29-30). Because the Plaintiff's RFC did not allow for the full range of light work, the ALJ relied on the testimony of a vocational expert ("VE") as evidence for finding a significant number of jobs in the national economy Mr. Swindler can perform. (R. 30-31). In reaching his conclusions, the ALJ considered the medical opinions of several physicians. (R. 29). The ALJ concluded by finding Mr. Swindler was not disabled. (R. 31).

## II.    STANDARD OF REVIEW

A court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining (1) whether there is substantial evidence in the

record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied.  *See Stone v. Comm'r of Soc. Sec.*, 544 F. App'x 839, 841 (11th Cir. 2013) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)).  A court gives deference to the factual findings of the Commissioner, provided those findings are supported by substantial evidence, but applies close scrutiny to the legal conclusions.  *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).

Nonetheless, a court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner.  *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004)).  "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'"  *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)).  Indeed, even if a court finds that the proof preponderates against the Commissioner's decision, it must affirm if the decision is supported by substantial evidence.  *Miles*, 84 F.3d at 1400 (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

However, no decision is automatic, for "despite th[e] deferential standard [for review of claims], it is imperative that th[is] Court scrutinize the record in its entirety to determine the reasonableness of the decision reached."  *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987) (citing *Arnold v. Heckler*, 732 F.2d 881, 883 (11th Cir. 1984)).  Moreover, failure to apply the correct legal standards is grounds for reversal.  *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

## III. DISCUSSION

Plaintiff argues the ALJ's decision should be reversed and remanded for two reasons: (1) the Appeals Council (the "AC") improperly disregarded evidence submitted on appeal; and (2) the ALJ failed to afford proper weight to the opinion of Dr. Wilson. (Doc. 14). Each contention is addressed in turn. Additionally, while the findings and decision of the Commissioner are conclusive if supported by substantial evidence, 42 U.S.C. § 405(g), it is "imperative that the Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges,* 815 F.2d at 624. After review, it appears the record as a whole does not support the ALJ's finding and conclusion as to Listing 12.03, and this issue is also addressed.

### A. New Evidence Submitted to the AC as to Listing 12.05

A claimant may present new evidence on appeal. *See* 20 C.F.R. §§ 404.900(b), 416.1470(b); *Ingram v. Com'r of Soc. Sec.*, 496 F.3d 1253, 1261 (11th Cir. 2007). The AC has discretion not to review the ALJ's denial of benefits. *See* 20 C.F.R. §416.1470(b). But where evidence submitted on appeal is new, material, and chronologically relevant, the AC must consider it. *Ingram*, 496 F.3d at 1261. Evidence is "new" if it is not cumulative to the evidence presented to the ALJ. *See Caulder v. Brown*, 791 F.2d 872, 877 (11th Cir. 1986) (where previous evidence was inadequate, a comprehensive evaluation of a back impairment was new evidence). New evidence is material if it is "relevant and probative so that there is a reasonable possibility that it would change the administrative result," *Hyde v. Bowen*, 823 F.2d 456, 459 (11th Cir. 1987), and it is chronologically relevant if it "relates to the period on or before the date" of the ALJ's decision. 20 C.F.R. § 404.970(b).

Mr. Swindler points to evidence submitted on appeal and contends the AC erred in not remanding the case for further consideration on the basis of this evidence. The evidence submitted to the AC included: (1) high school records for Plaintiff dated September 1, 1982, to June 1, 1983; (2) CED Mental Health records dated February 2, 2010, through January 30, 2011; (3) CED Mental Health records dated January 9, 2014, through May 27, 2014; and (4) mental health records from Dr. Wilson dated May 27, 2014. (R. 5). In denying Plaintiff's appeal, the AC considered this evidence but stated, "We considered whether the [ALJ's] action, findings, or conclusion is contrary to the weight of the evidence currently of record. We found that this information does not provide a basis for changing the [ALJ's] decision." (R. 2). For the reasons explained below, the evidence submitted on appeal is contrary to the weight of the evidence of record at the time of the ALJ's decision, and it does provide a basis for changing the administrative result.

On May 27, 2014, Plaintiff was evaluated by Dr. Wilson and received a full scale IQ score of 69. (R. 517). Plaintiff submitted this result to the AC and contends it shows Plaintiff meets Listing 12.05 for intellectual disability. The ALJ did not consider Listing 12.05 (intellectual disorder). (R. 24). Listing 12.05 provides in pertinent part:

> Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05 (effective June 7, 2011, through Jun 12, 2012). The required level of severity for this disorder is met when a claimant can show "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." *Id.*

The full scale IQ score submitted on appeal is "new" in that it is not cumulative to evidence already in the record. *Caulder*, 791 F.2d at 877. Although there are several references to Mr. Swindler's possible or even likely developmental disability and there are medical records which objectively support the inference that he has such a disability, no IQ test results were in the record before the ALJ.

As to chronological relevance, the IQ score is chronologically relevant if it "relates to the period on or before the date" of the ALJ's decision. 20 C.F.R. § 404.970(b). An IQ test creates a rebuttable presumption of a "fairly constant" IQ throughout a claimant's life. *Hodges v. Barnhart*, 276 F.3d 1265, 1268-69 (11th Cir. 2001). It is possible certain evidence could rebut the presumption that Mr. Swindler's full scale IQ has remained constant at 69, but other evidence tends to support the conclusion that his intellectual functioning is significantly subaverage. For example, there is evidence Mr. Swindler was placed in special education as a child because of learning disabilities, and a counselor suspected he had a developmental disability. (R. 264, 505). The court finds the test result is chronologically relevant because it presents evidence of a qualifying IQ score which Mr. Swindler is presumed to have had during the period in question.

Finally, the score is "material" in that it is "relevant and probative" and presents a "reasonable possibility" of changing the administrative result. *Hyde*, 823 F.2d at 459. Given a full scale IQ of 69, coupled with the ALJ's finding of various severe, work-related impairments, it appears new evidence submitted on appeal meets the severity requirement for an intellectual disability under Listing 12.05. (R. 23). Although the Commissioner points out Dr. Wilson's test revealed various scores in the seventies (Doc. 16 at 7-8), the regulations are clear that "where verbal, performance, and full scale IQs are provided," the lowest score is used. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00D.6.c. Therefore, the only remaining criteria under Listing 12.05

are whether Mr. Swindler has "significantly subaverage general intellectual functioning," including "deficits in adaptive functioning" which appeared before the age of twenty-two.

The Commissioner contends Mr. Swindler is unable to meet the Listing 12.05 criteria because he cannot demonstrate onset of a deficit in adaptive functioning which appeared before the age of twenty-two. However, the Eleventh Circuit has held that "a claimant need not present evidence that [he] manifested deficits in adaptive functioning prior to the age twenty-two, when [he] presented evidence of low IQ test results after the age of twenty-two." *Monroe v. Com'r of Soc. Sec.*, 504 Fed. App'x 808, 810 (11th Cir. 2013). Further, various records would support the conclusion that Mr. Swindler's intellectual functioning was significantly subaverage as a child if they were considered in light of the new evidence submitted on appeal. For example, a mental health record dated January 15, 2010, indicates Mr. Swindler was placed in special education as a child due to learning disabilities. (R. 264). Dr. Wilson's report of February 2, 2011, also indicates Plaintiff was in special education before his mother "pulled [him] out" of the ninth grade and placed him in a state hospital. (R. 449). Finally, a report card submitted on appeal shows Plaintiff received all "F's" in ninth grade. (R. 501). Another record submitted on appeal, dated July 2, 2010, indicates a counselor "suspect[ed] developmental disability." (R. 505).

The Commissioner points to evidence which might tend to support a finding that Plaintiff's adaptive functioning deficits do not meet the severity required for Listing 12.05. (Doc. 11 at 9). However, the record also contains much evidence that Mr. Swindler's adaptive functioning has been severely limited since before he turned twenty-two. This, in combination with the evidence which tends to show Mr. Swindler's subaverage intellectual functioning had an onset before the age of twenty-two, presents a substantial likelihood that if the ALJ had

considered Mr. Swindler's full scale IQ score, various other records would have supported a finding that his impairments meet Listing 12.05.  Accordingly, this evidence is material.

Because the evidence of Mr. Swindler's IQ test results are new, material, and chronologically relevant, it was error for the AC to refuse to consider the submissions on appeal.  Accordingly, this matter is due to be remanded for further consideration consistent with this opinion.

### B. ALJ's Treatment of Dr. Wilson's Opinion

Plaintiff contends the opinions of Dr. Wilson were improperly weighed by the ALJ.  The ALJ found the February 2011 opinion of Dr. Wilson to be of "some weight" but found it was "less persuasive than the opinion of Dr. Arnold or Dr. Nichols as his opinion is inconsistent with the claimant's treatment records and with the opinions of Dr. Nichols and Dr. Arnold."  (R. 29).  The ALJ did not elaborate as to his finding that Dr. Wilson's opinion is inconsistent with the treatment records nor did he specify why the opinions of Dr. Nichols and Dr. Arnold were entitled to greater weight.  Therefore, it is impossible to evaluate whether the ALJ's finding is supported by substantial evidence or whether this conclusion is due to be revised upon review of the newly submitted evidence.  This court may not affirm "simply because some rationale might have supported the ALJ's conclusion."  *Winschel v. Comm'r of Soc. Sec*, 631 F.3d 1176, 1179 (11th Cir. 2011) (citing *Owens v. Heckler,* 748 F.2d 1511, 1516 (11th Cir. 1984)).  On remand, the ALJ is instructed to "state with particularity the weight given to different medical opinions and the reasons therefore."  *Winschel*, 631 F.3d at 1179.

### C. ALJ's Conclusion as to Listing 12.03

In finding Plaintiff does not have an impairment that meets or medically equals any of the listed mental health impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1, the ALJ

considered Listings 12.03 (schizophrenia spectrum and other psychotic disorders), 12.04 (depressive, bipolar, and related disorders), and 12.06 (anxiety and obsessive-compulsive disorders). (R. 24). The ALJ found the record did not contain diagnostic findings, signs, symptoms, or laboratory results that met any of the listed impairments and there were no opinions from medical professionals or psychological consultants which indicated Plaintiff's impairments alone or in combination equaled one of these listings. (R. 24). In reaching this decision, the ALJ considered whether the paragraph B criteria for each listing were satisfied, and he concluded they were not. (R. 24). The court finds the ALJ's legal conclusion as to Listing 12.03 is not supported by substantial evidence.

At the time of the ALJ's decision, a claimant could meet the criteria for Listing 12.03 by providing medical documentation of delusions or hallucinations with at least two of the following results: (1) marked restriction of activities of daily living; (2) marked difficulties in social functioning; (3) marked difficulties in maintaining concentration, persistence, or pace; or (4) repeated episodes of decompensation, each of "extended duration." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.03 (effective June 7, 2011, through June 12, 2012). Alternatively, a claimant could meet the Listing criteria by showing a record of delusions or hallucinations and a "medically documented history of a chronic schizophrenic … or other psychotic disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication of psychosocial support," along with "[a] residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate." *Id.*

Mr. Swindler was diagnosed with schizophrenia at various points in his life, which is reflected in the ALJ's findings. (R. 23). This included diagnoses of delusions and hallucinations. (*See, e.g.,* R. 275, 294-95, 517). However, the ALJ found Mr. Swindler had only "mild" (not "marked") limitation in his daily living activities; moderate difficulties in his social functioning; and moderate difficulties in his concentration, persistence, and pace. (R. 24).

"Marked" difficulties are more than moderate, but less than extreme. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00. "A marked limitation may arise when several activities or functions are impaired, or even when only one is impaired, as long as the degree of limitation is such as to interfere seriously with [a claimant's] ability to function independently, appropriately, effectively, and on a sustained basis." *Id.*; *see also* 20 C.F.R. §§ 404.1520(a), 416.920(a). Social functioning refers to the ability to interact with other individuals, and a claimant may demonstrate impaired social functioning by, for example, presenting evidence of a history of altercations, fear of strangers, or social isolation. *Id.* Episodes of decompensation are temporary increases in symptoms or signs accompanied by a loss of adaptive functioning, and they can be demonstrated by an exacerbation of symptoms or signs that would ordinarily require increased treatment or a less stressful situation; these episodes can be inferred from records showing alterations in medication, hospitalizations, or evidence of the need for such treatment. *Id.* To be "repeated" and "each of extended duration" means the claimant suffers three episodes in a year, or an average of once every four months, with each episode lasting for at least two weeks. *Id.* More frequent episodes of shorter duration or less frequent episodes of longer duration can also lead to a finding that the impairment "equals" the Listing. *Id.*

The ALJ found Mr. Swindler had only moderate difficulties in social functioning. (R. 24). The ALJ indicated Plaintiff's testimony about his long-term girlfriend and "regular" church

attendance cut against his testimony that he does not like to be around people and has difficulty being in the presence of others when working. (R. 24). However, this does not accurately reflect Mr. Swindler's testimony, in which he stated he only goes to church when he can use his dad's truck to go see his girlfriend as well. (R. 66). Mr. Swindler stated that happens "once in a blue moon" and in reality he only sees his girlfriend "maybe three times in two months." Therefore, the ALJ's finding that Mr. Swindler only suffered "moderate" restriction in his social functioning is not supported by the evidence cited, insofar as it rests solely on Mr. Swindler's cited testimony. Further, the court sees no other indications in the record which would suggest Plaintiff is not markedly limited in his social functioning. To the contrary, the record suggests Plaintiff was markedly limited in his social activities, as evidenced by his anger outbursts (R. 254); inability to remember his fiancee's last name (R. 264); and isolation due to severe and pervasive mental health symptoms, including hallucinations and homicidal and suicidal ideation. (*See, e.g.,* R. 270, 294-97, 299). The court does not substitute its judgment as to the weight of the evidence of Mr. Swindler's difficulties. However, the ALJ's legal conclusion regarding Mr. Swindler's difficulties in social functioning are not supported by the specified findings or the record as a whole.

As to episodes of decompensation, the ALJ found Mr. Swindler had no episodes of decompensation which met the criteria under Listing 12.03. (R. 24). However, the record shows Plaintiff testified he was hospitalized for behavioral and psychiatric problems at a state mental facility in Texas, which is also reflected in the medical record he submitted on appeal. (R. 45-46, 271). By Plaintiff's account at the hearing, this hospitalization lasted throughout tenth grade; by another account it was from the ages of fourteen to seventeen. (*Id.*). No evidence suggests this hospitalization lasted less than a nine-month school year. In finding Mr. Swindler had

experienced "no episodes of decompensation" which met the paragraph C criteria for Listing 12.03, the ALJ did not address the evidence of this period of Mr. Swindler's life.

Further, the record shows several episodes of decompensation in 2011, 2012, and 2013. Records from August 2011 show Plaintiff's medication was increased in response to his hearing voices. (R. 256). Plaintiff reported hearing voices or hallucinating at several other times, for example in May 2012, June 2012, and February 2013 (at which point he reported hearing voices over the previous four months). (R. 294, 270, 297). These records indicate Mr. Swindler's impairments may well have met the criteria for episodes of decompensation which satisfy the frequency and durational requirements for Listing 12.03. Without any discussion from the ALJ beyond a conclusory statement that no adequate episodes of decompensation appear in the record, it is impossible to determine whether the ALJ's findings are supported by substantial evidence.

Accordingly, this matter is due to be remanded for further consideration of whether Plaintiff's impairments meet or medically equal Listing 12.03.

### D. Motion to Remand

Plaintiff has filed a motion to remand. (Doc. 18). The motion argues the ALJ's decision "failed to assess the intensity and persistence of [his] symptoms pursuant to Social Security Ruling 16-3p," which went into effect on March 28, 2016, and which Plaintiff contends applies retroactively. (*Id.* at 1). Accordingly, the plaintiff seeks remand for further consideration pursuant to SSR 16-3p. (*See generally* Doc. 18). Because the court remands for further consideration of new evidence submitted on appeal, the court need not reach the question of whether remand is required on the basis of SSR 16-3p, and Plaintiff's motion **DENIED** as moot.

. **IV. CONCLUSION**

For all of the foregoing reasons, the decision of the ALJ is subject to remand for proper consideration of Mr. Swindler's case. A separate order will be entered.

**DONE** this 31st day of March, 2017.

_____
STACI G. CORNELIUS
U.S. MAGISTRATE JUDGE